IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRACY L. CONLEY, ) | |
| ) | |
| Petitioner, ) | Case No. 18 C 7122 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| UNITED STATES OF AMERICA,[1] ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

On April 15, 2019, petitioner Tracy L. Conley, by counsel, filed this amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated below, the Court denies Conley's § 2255 motion. The Court, however, certifies the following issues for appeal under 28 U.S.C. § 2253(c): (1) whether the ATF's practice of recruiting individuals into conspiring to rob false drug stash houses amounted to outrageous conduct violating Conley's fifth amendment due process rights; and (2) whether the ATF's conduct in targeting racial minorities for false stash house stings amounted to selective enforcement in violation of Conley's fifth amendment equal protection rights.

**Background**

On January 24, 2014, a jury convicted Conley of the following counts in the April 2012 indictment: (1) conspiracy to possess with intent to distribute five kilograms or more of mixtures containing cocaine in violation of 21 U.S.C. §§ 841(a), 846 (count 1); (2) attempt to possess with intent to distribute five kilograms or more of mixtures containing cocaine in violation 21 U.S.C. §§ 841(a), 846 (count 2); (3) possession of a firearm in furtherance of a drug trafficking crime in

---

[1] The proper Respondent in a 28 U.S.C. § 2255 action is the United States, not the warden of federal correctional center where the petitioner is incarcerated. The Court therefore substitutes the United States as the Respondent pursuant to Federal Rule of Civil Procedure 25(d).

violation of 18 U.S.C. § 924(c)(2) (count 3); and (4) unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (count 5). The Court sentenced Conley to 120 months in prison for counts 1, 2, and 5 to run concurrently and 60 months for count 3 to run consecutively for a total of 180 months in prison. The Court's sentence was based, in part, on a "fictious" quantity of drugs in this false stash house case, which resulted in mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A)(ii)(II).

To clarify, Conley's prosecution and conviction were the result of a former practice used by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") of engaging in sting operations where undercover agents provided individuals with the opportunity to rob fake drug stash houses that did not exist. In short, the ATF's practice involved enticing individuals, most of whom were impoverished racial minorities, into "conspiring to rob fictitious stash houses of fictitious drugs or money operated by fictitious drug dealers." *United States v. Paxton*, No. 13 CR 0103, 2018 WL 4504160, at *1 (N.D. Ill. Sept. 20, 2018) (Gettleman, J.). On direct appeal, the Seventh Circuit described the general background underlying Conley's conviction:

> Tracy Conley was ensnared in a now familiar government set up in which a government actor, pretending to be a criminal, presents the defendant with an opportunity to be part of a robbery of an illegal drug stash house. The stash house is fictional, of course, and so the government decides which and what quantity of drugs it will have (in this case, fifty kilograms of cocaine) and how high or low the barriers to the crime will be (in this case it was allegedly protected only by two armed and one unarmed guards).

*United States v. Conley,* 875 F.3d 391, 394 (7th Cir. 2017).

A brief summary of the evidence adduced at Conley's trial begins with an undercover ATF agent approaching Myreon Flowers with the opportunity to rob a stash house of an alleged drug boss explaining the type and quantity of drugs and emphasizing the need for guns. Myreon then recruited his brother David Flowers and cousins Anwar Trapp and Dwayne Jones into the scheme. The cousins met on October 31, 2011 for the purpose of planning the robbery of the drug stash

house. At that meeting, the cousins discussed recruiting Anthony Adams for their scheme because Adams had a gun. On November 1, 2011, Trapp, Myreon, and David met with Adams. Later that same day, Trapp, David, and Adams picked up Conley and went back to Adams' apartment to discuss the robbery. At trial, Trapp testified that Myreon told them about the details of the robbery and discussed that Adams, Conley, and another person would assist in the robbery. Unbeknownst to Conley, the Flowers brothers, or the other participants, the robbery was targeting a false stash house set up by the ATF.

Upon his arrest, Conley provided a statement that he had gone to work on November 1, but was sent home early. He did not have enough money to purchase gas for his car to go home, so he agreed to help his friend Adams clean his apartment. Adams then took Conley to his apartment where they met with others. At Myreon's direction, two vans were driven in furtherance of the robbery. Later that day, Conley, Adams, and another individual arrived at David's home and got into one of the vans. Both vans were driven to a forest preserve where federal agents stopped and arrested the occupants of both vans that contained a total of three firearms.

On direct appeal, Conley asserted that the government failed to meet its burden in establishing sufficient evidence to support his conspiracy and firearm convictions and that the government entrapped him into committing these crimes. The Seventh Circuit affirmed, but concluded with the following discussion:

> We conclude with a word about the district court's articulated dismay with the prosecution of this stash house case. In its order, the district court questioned "the wisdom and purpose of expending the level of law enforcement resources and judicial time and effort in this prosecution." At sentencing the court stated that Conley's sentence was "devoid of [ ] true fairness ... and will serve no real purpose other than to destroy any vestiges of respect in our legal system and law enforcement that this defendant and his community may have had." Specifically, the district court was dismayed that it was forced into a minimum sentence based on the government's ability to control the sentence by manipulating the amount and type of drugs that were "in" the fictitious stash house.

*Conley*, 875 F.3d at 402 (internal citations omitted).

Turning to Conley's § 2255 motion, he brings the following claims: (1) ATF officers engaged in outrageous conduct in violation of his fifth amendment due process rights; (2) ATF officers selectively targeted racial minorities for false stash house stings in violation of the equal protection clause; (3) trial and appellate counsel provided constitutionally ineffective assistance of counsel; and (4) his conspiracy conviction cannot serve as a "drug trafficking crime" under 18 U.S.C. § 924(c)(2).

**Legal Standards**

Section 2255(a) of title 28 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." Simply put, relief under § 2255 is available in extraordinary situations, such as when an error of constitutional or jurisdictional magnitude has occurred. *See Hanson v. United States*, 941 F.3d 874, 876 (7th Cir. 2019).

If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, or that enforcing the procedural default would lead to a fundamental miscarriage of justice. *Lund v. United States,* 913 F.3d 665, 667 (7th Cir. 2019); *Farmer v. United States*, 867 F.3d 837, 842 (7th Cir. 2017). Because Sixth Amendment ineffective assistance of counsel claims often involve evidence outside of the trial record, such claims may be brought for the first time in a § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Cates*, 950 F.3d 453, 457 (7th Cir. 2020).

**Discussion**

*Due Process Outrageous Conduct Claim*

In his § 2255 motion, Conley argues that federal law enforcement engaged in outrageous conduct in violation of his fifth amendment due process rights by recruiting participants and manufacturing a crime that forced the Court to give him mandatory minimum sentences based on manipulated and imaginary quantities of drugs.

Conley's first hurdle in establishing this claim is to overcome his procedural default. Conley acknowledges that he did not present this claim on direct appeal, but that his procedural default is excepted based on cause and actual prejudice. *See United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Farmer*, 867 F.3d at 842. In particular, Conley argues the cause for his failure to raise this claim on direct appeal was that its legal basis was not available because he is seeking to extend Seventh Circuit law to include a fifth amendment due process outrageous conduct claim under the circumstances. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) ("showing that the factual or legal basis for a claim was not reasonably available to counsel" constitutes "cause under this standard."). The Court agrees. The Court also concludes that Conley has established actual prejudice, namely, that either his indictment would have been dismissed if he had established this outrageous conduct claim or that his sentence would have been lower without the imaginary drug amount resulting in statutory minimum sentences for his drug offenses.

Moving to the merits of Conley's due process claim, he acknowledges that the Seventh Circuit has yet to determine under what circumstances an outrageous government conduct defense would be available. Conley asserts that based on the egregious conduct in this case, the Seventh Circuit should adopt this defense. Specifically, Conley contends the constitutionally outrageous conduct in his case included that the ATF agents: (1) targeted racial minorities; (2) concocted fake

5

stash houses full of fake drugs and fake guns; (3) entreated their initial targets to recruit other targets without regard for what the initial targets might say and without certainty that the additional targets knew the scheme's details; and (4) attempted to insulate themselves from an entrapment defense because the original targets recruited the additional targets. *See, e.g., Conley*, 875 F.3d at 402 ("Conley's co-conspirators, and not the government, recruited him."). Also, the agents encouraged the targets and any other participants to carry firearms to combat any violence expected at the fake stash house.

The genesis of the outrageous conduct defense is the Supreme Court case, *United States v. Russell,* 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), where the Court suggested that there may be "a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." Two years later, the Seventh Circuit recognized that "*Russell* did not rule out the possibility that some governmental conduct might be so shocking that prosecution would be barred as a matter of due process." *United States v. Quintana*, 508 F.2d 867, 877 (7th Cir. 1975). The *Quintana* decision highlighted the *Russell* Court's statement that "such law enforcement conduct would have to be violative of 'fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment.'" *Id.* (quoting *Russell*, 411 U.S. at 432); *cf. Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In 2013, the Seventh Circuit explained "*Russell* offers no real guidance to lower courts as to the type or level of conduct by the government that might, standing alone, amount to a due process violation" and "[w]ithout such guidance from the Supreme Court, our court has disallowed such a defense in this circuit." *United States v. Westmoreland*, 712 F.3d 1066, 1071 (7th Cir. 2013). Yet, the Seventh Circuit has also recognized that "the Supreme Court did not foreclose the 'outrageous conduct' defense – but it did not mandate its application either." *United States v. Kienast*, 907 F.3d 522, 530 (7th Cir.

2018). Rather, the Seventh Circuit has acknowledged that "we have never taken what we see to be an extreme step of dismissing criminal charges against a defendant because of government misconduct." *United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006). And, when rejecting the outrageous conduct defense, the Seventh Circuit has often considered the specific facts of the case when concluding the alleged outrageous conduct was not conscience shocking. *See, e.g., Kienast,* 907 F.3d. at 530-31; *United States v. Smith,* 792 F.3d 760, 766 (7th Cir. 2015); *Westmorland,* 712 F.3d at 1072-73; *see also United States v. Kaminski,* 703 F.2d 1004, 1009 (7th Cir. 1983) ("government conduct must be truly outrageous before due process will prevent conviction of the defendant."). In circuits that have considered the outrageous conduct defense, courts determine whether the government conduct was so outrageous that it was violative of due process under the totality of circumstances. *See, e.g., United States v. Anzalone*, 923 F.3d 1, 6 (1st Cir. 2019); *United States v. Hare,* 820 F.3d 93, 102 (4th Cir. 2016); *United States v. Black,* 733 F.3d 294, 303 (9th Cir. 2013).

Looking to the totality of the circumstances in this case, the ATF officers engineered a drug conspiracy with the goal of achieving as many convictions as possible – as opposed to legitimate law enforcement objectives – in the context of racial profiling. *See United States v. Brown,* 299 F.Supp.3d 976, 986 (N.D. Ill. 2018) (Castillo, J.) ("It is unclear to the Court why, with all the tactics available to them, federal law enforcement agents would adopt a narrative tinged with racial overtones to conduct sting operations involving serious federal charges."). Based on this scheme, the Court was forced to sentence Conley to mandatory minimum sentences based on imaginary drugs, which underscores the ATF agents' outrageous conduct. As the Ninth Circuit explained in the context of fictional stash house operations:

> [T]he government has virtually unfettered ability to inflate the amount of drugs supposedly in the house and thereby obtain a greater sentence for the defendant. In fact, not only is the government free to set the amount of drugs in a fictional stash house at an arbitrarily high level, it can also minimize the obstacles that a defendant must overcome to obtain the drugs.

7

*United States v. Briggs*, 623 F.3d 724, 729-30 (7th Cir. 2010). If there ever was a situation in which the conduct of law enforcement agents was so outrageous that a criminal defendant's due process rights have been violated, this is it.

Although the Court cannot extend Seventh Circuit precedent to include a fifth amendment due process right based on outrageous conduct that is conscience shocking, the Court concludes that the Seventh Circuit should revisit this due process right under the facts of this case. The Court reluctantly denies Conley's outrageous conduct claim, but certifies this claim for appeal under 28 U.S.C. § 2253(c), as discussed below.

*Equal Protection Selective Law Enforcement Claim*

Conley also argues that the ATF violated his fifth amendment equal protection rights by targeting racial minorities for false stash house stings. *See Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) ("the Constitution prohibits selective enforcement of the law based on considerations such as race."). Although Conley did not bring this claim on direct appeal, the government does not challenge Conley's assertions that his procedural default is excepted by cause and prejudice; therefore, the Court proceeds directly to the merits of this claim. *Perrone v. United States*, 889 F.3d 898, 904 (7th Cir. 2018) ("Procedural default is a waivable defense.").

Conley is not asserting a selective prosecution claim under *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), an opinion that highlighted the "presumption of regularity" that attaches to prosecutorial decisions. Instead, Conley brings a selective enforcement claim where federal agents, unlike prosecutors, "are not protected by a powerful privilege or covered by a presumption of constitutional behavior." *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (en banc). As mentioned, underlying this claim is the selective enforcement tactic of racial profiling. *See United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002).

In the context of false stash house cases that were ongoing after Conley's prosecution, former Chief Judge Castillo described the ATF's practice as follows:

> "[F]alse stash house cases," have served to undermine legitimate law enforcement efforts in this country. It is undisputed that between 2006 and 2013, the defendants charged in this District in the ATF false stash house cases were 78.7 black, 9.6 percent Hispanic, and 11.7 percent white. During this same period, the District's adult population was approximately 18 percent black, 11 percent Hispanic, and 63 percent white. These numbers generate great disrespect for law enforcement efforts. Disrespect for the law simply cannot be tolerated during these difficult times. It is time for these false stash house cases to end and be relegated to the dark corridors of our past. To put it simply, our criminal justice system should not tolerate false stash house cases in 2018.

*Brown,* 299 F.Supp.3d at 983–84. Judge Castillo wrote the *Brown* opinion in the context of motions to dismiss indictments in twelve separate cases. Prior to this written opinion, nine district judges, who had false stash house cases, conducted an unprecedented evidentiary hearing. In *Brown*, Judge Castillo denied the motions to dismiss, but encouraged the government to bring these cases to a reasonable conclusion. As a result, the United States Attorney offered these defendants, whose charges included mandatory minimum sentences, the opportunity to plead to a single count of conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), which does not have a mandatory minimum sentence. Conley was not one of these defendants because he had already been convicted and sentenced.[2]

To establish a selective enforcement claim, Conley must "demonstrate that the agents' actions had a discriminatory effect and that the agents had a discriminatory purpose." *Barlow*, 310 F.3d at 1010; *see also Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001). "Law

---

[2] From the time of his arraignment to the present, Conley has bemoaned his prosecution as patently unfair based on the government controlling the entire stash house scenario. After the *Brown* decision, Conley was further frustrated by the reduced sentences of others similarly situated, who had been more directly involved in the stash house robbery schemes. Conley's level of frustration concerning the outcome of his case is exacerbated by COVID-19 and other uncertainties in our country. The Court also notes that there may be ways to address his circumstances, including a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

enforcement has a racially discriminatory effect when members of a protected racial group … receive less favorable treatment than nonmembers." *Barlow*, 310 F.3d at 1010; *see also Armstrong*, 517 U.S. at 464-65. To demonstrate discriminatory intent, Conley has the burden of showing "the existence of purposeful discrimination" in his case. *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (citation omitted).

Conley first argues that the applicable evidentiary standard for selective enforcement claims is the preponderance of the evidence based on the Seventh Circuit's distinction between selective enforcement and selective prosecution claims highlighted in the en banc *Davis* decision. In *Brown*, Judge Castillo recognized that *Davis* did not directly address what standard governs the resolution of a substantive selective enforcement claim, as opposed to discovery on selective enforcement claims. Nonetheless, Judge Castillo relied upon a Third Circuit holding: "A defendant challenging a criminal prosecution at either the law enforcement or prosecution inflection points must provide "clear evidence" of discriminatory effect and discriminatory intent (the latter is sometimes referred to as "discriminatory purpose")." *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017). Under the clear evidence standard, Judge Castillo concluded that the defendants in *Brown* did not establish discriminatory effect or intent.

Here, Conley relies on the same expert report as the *Brown* defendants did, namely, the expert report and findings of Professor Jeffrey Fagan, who conducted a statistical analysis of stash house cases in the Northern District of Illinois. Conley argues that under the preponderance of the evidence standard, Professor Fagan's report demonstrates that the ATF's fake stash house practice had a discriminatory effect and intent. Conley also supplies comments made by ATF agents in various stash house cases arguing that these statements reveal the intent to target individuals based on race.

Although Judge Castillo rejected these same arguments under the clear evidence standard, the Court finds no reason to disturb his findings, especially in light of the Court's inability to extend Seventh Circuit law and adopt the preponderance of the evidence standard for substantive selective enforcement claims. Indeed, it appears that the Seventh Circuit may be leaning in this direction when it acknowledged that "the sort of considerations that led to the outcome in *Armstrong* do not apply to a contention that agents of the FBI or ATF engaged in racial discrimination when selecting targets for sting operations, or when deciding which suspects to refer for prosecution." *Davis*, 793 F.3d at 721. Nevertheless, under the hierarchy of legal authority, the Court is not in the position to change Seventh Circuit law. Accordingly, the Court denies Conley's substantive selective enforcement claim, but certifies this claim for appeal because reasonable jurists could debate that his claim should have been resolved in a different manner based on the uncertainty of the applicable evidentiary standard. *See Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

*Ineffective Assistance of Counsel Claims*

Conley brings two separate arguments concerning his trial counsel's constitutionally ineffective assistance. To establish ineffective assistance of counsel in violation of the Sixth Amendment, Conley must show: (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms;" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When analyzing the *Strickland* performance prong, courts presume counsel's conduct is within the "wide range of reasonable professional assistance." *Laux v. Zatecky*, 890 F.3d 666, 674 (7th Cir. 2018) (quoting *Strickland*, 466 U.S. at 689). Under the *Strickland* prejudice prong, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," rather, Conley must

11

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693, 695. If Conley fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *Id.* at 697.

Conley first asserts that his trial counsel was constitutionally ineffective because he failed to object to co-conspirator Anwar Trapp's trial testimony. Conley explains that the government's *Santiago* proffer anticipated that David Flowers would be the cooperating witness at trial, not Trapp. Accordingly, Conley argues that the Court did not have the opportunity to exercise its gatekeeping function under Federal Rule of Evidence 801(d)(2)(E) in relation to Trapp's statements. *See United States v. Santiago*, 582 F.2d 1128, 1130 (7th Cir. 1978). The government responds that by the time of the pretrial conference, it had second thoughts about calling David Flowers in light of certain credibility issues and had contacted defense counsel about Trapp testifying at trial. The government also asserts that it provided defense counsel with *Giglio* materials and witness statements under the Jencks Act as to Trapp well before trial.

In his motion for a new trial – where Conley was represented by different counsel than his trial counsel – he argued that the Court erred in allowing Trapp's testimony. The Court rejected this argument as follows:

> The *Santiago* proffer set forth the expected testimony of co-conspirators, that it was David Flowers instead of Anwar Trapp that the government expected to call is harmless because the testimony offered through Anwar Trapp was not materially different. There was evidence of the conspiracy and the statements were made in furtherance of the conspiracy.

*United States v. Conley*, No. 11-CR-0779-6, 2015 WL 394012, at *5 (N.D. Ill. Jan. 25, 2015). Based on this ruling, trial counsel's failure to object to Trapp's testimony is immaterial. This immaterial difference does not support the conclusion that counsel's performance "fell below an objective standard of reasonableness." In short, it was reasonable trial strategy not to object to Trapp's testimony under the circumstances. Conley's argument that appellate counsel was ineffective for

failing to bring this issue on appeal fares no better. *See Davila v. Davis,* ___ U.S. ___137 S.Ct. 2058, 2067, 198 L.Ed.2d 603 (2017) ("Declining to raise a claim on appeal … is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court.").

Conley also argues that his trial counsel was constitutionally ineffective for failing to present certain video evidence at trial. He specifically contends that trial counsel was aware of, yet failed to present, a government video of his arrest at the forest preserve that would have contradicted key testimony about whether he joined the drug conspiracy. Conley represents that his trial counsel showed him this video. In response, and pursuant to the Court's request, the government provided an affidavit of completeness signed under penalty of perjury that it has turned over all of the video discovery from this case to Conley's present counsel averring that it appears the video evidence Conley references does not exist.[3] Even if this video evidence did exist, counsel's failure to present the video evidence at trial did not prejudice Conley because of the considerable amount of evidence that Conley had joined the conspiracy, including Trapp's trial testimony and significant surveillance data. *See, e.g., Conley,* 875 F.3d at 398-99.

Next, Conley maintains that his appellate counsel was constitutionally ineffective for failing to appeal the denial of his motion for discovery into the ATF's racially selective profiling. In analyzing this argument, the Court applies the familiar two-prong test set forth in *Strickland. See Kimbrough v. Neal,* 941 F.3d 879, 881 (7th Cir. 2019). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is plainly stronger than the claims counsel did raise on appeal. *Davila,* 137 S.Ct. at 2067. In this context, "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but

---

[3] Rule 6 of the Rules Governing Section 2255 Proceedings allows for discovery under the Federal Rules of Civil Procedure. *See Lafuente v. United States,* 617 F.3d 944, 947 (7th Cir. 2010). Therefore, the government's assertion that it is unclear whether the Court had the authority to request the affidavit of completeness is misplaced.

rather only those arguments most likely to succeed." *Id.* To establish the *Strickland* prejudice prong, Conley must show there is a reasonable probability that the issue appellate counsel did not raise would have made a difference in the outcome of his appeal. *See Strickland*, 466 U.S. at 694; *Ramirez v. Tegels*, ___ F.3d ___, 2020 WL 3428084, at *6 (7th Cir. June 23, 2020).

To give context, Conley's co-defendant Myreon Flowers filed a motion for discovery concerning racial profiling and selective prosecution that Conley adopted. The Court denied Conley's motion and rejected his subsequent post-trial argument. The Court notes that the parties' district court arguments focused on selective prosecution, not selective enforcement, thus calling into question whether this argument was properly preserved for appeal in the first instance. Also, the Court recognizes that when challenging a discovery ruling on appeal, the Seventh Circuit defers to this Court's discretion, *see Kienast*, 907 F.3d at 530, whereas the Seventh Circuit reviews the denial of a post-trial motion for acquittal challenging the sufficiency of the evidence de novo. *See Conley*, 875 F.3d at 397. In this context, the Court would be hard-pressed to conclude that challenging the discovery ruling was a clearly stronger argument than Conley's appellate arguments related to the sufficiency of the evidence underlying his conviction. *See Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Put differently, appellate counsel was not constitutionally ineffective for bringing the most promising issues on appeal, including the sufficiency of the evidence and entrapment arguments, instead of challenging the ruling on a discovery motion. The Court therefore denies this ineffective assistance claim.

*Improper Predicate Offense Claim*

Last, Conley argues that his conviction under 18 U.S.C. § 924(c)(2) is invalid because it is not supported by a proper predicate offense, although he was convicted of a "drug trafficking crime" in

14

count 1 of the indictment. Conley first points to the jury instructions for count 1 and the § 924(c)(2) count, explaining that the jury was not instructed to determine that the conspiracy's objective was drug trafficking. Viewing the jury instructions as a whole, *see United States v. Kelerchian*, 937 F.3d 895, 914 (7th Cir. 2019), the instructions properly informed the jury that the predicate offense was a conspiracy in relation to possessing with the intent to distribute 5 kilograms or more of a mixture or substance containing cocaine. Conley's first argument is unavailing.

Conley also argues that his conviction under § 924(c)(2) is invalid because the underlying drug trafficking conviction involved drugs that did not exist. Conley thus argues he was not given fair notice of the punishable conduct in the first instance. *See Johnson v. United States,* 135 S.Ct. 2551, 2556, 192 L.Ed.2d 569 (2015) (criminal law is unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes"). Not only does Conley make this argument for the first time in his reply brief, he fails to develop it. *See United States v. Barr,* 960 F.3d 906 (7th Cir. 2020) ("undeveloped, unsupported argument[s are] waived"); *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019) ("arguments raised for the first time in a reply brief are waived"). As such, this argument is waived.

On a final note, Conley's remaining arguments about the insufficiency of the evidence underlying his § 924(c)(2) conviction were either brought on appeal or should have been brought on appeal to the Seventh Circuit. The Court therefore denies Conley's § 924(c)(2) claim.

*Certificate of Appealability*

Under § 2253(c), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Conley is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right, which requires him to show that "reasonable jurists could debate whether (or, for that matter, agree

15

that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 336 (citation omitted).

As discussed, Conley has made a showing reasonable jurists would debate that his due process outrageous conduct and selective enforcement claims should have been resolved in a different manner. On the other hand, Conley has failed to show that reasonable jurists would debate his ineffective assistance claims based on Trapp testifying at trial nor his ineffective assistance claims based on the video evidence and discovery motion. Last, reasonable jurists would not debate the Court's ruling on Conley's 18 U.S.C. § 924(c)(2) argument.

**Conclusion**

For these reasons, the Court denies petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [1, 21] The Court certifies the following issues for appeal under 28 U.S.C. § 2253(c): (1) whether the ATF's practice of recruiting individuals into conspiring to rob fake drug stash houses amounted to outrageous conduct violating Conley's fifth amendment due process rights; and (2) whether the ATF's conduct in targeting racial minorities for false stash house stings amounted to selective enforcement in violation of Conley's fifth amendment equal protection rights.

SO ORDERED

_____
Sharon Johnson Coleman
United States District Judge

DATED: 7/23/2020